## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAUL POWER,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LOCKHEED MARTIN CORP.,** | : | **No. 18-2672** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                                    JANUARY 14, 2020

Between May 2017 and May 2018, 56-year-old Paul Power was demoted twice after 27 years of employment with Lockheed Martin Corporation. Lockheed Martin claims that Mr. Power's first demotion was due to its decision to reorganize the business unit, and Mr. Power's second demotion was due to his poor performance. Mr. Power says these explanations are pretext for age discrimination. He sued Lockheed Martin under the Age Discrimination in Employment Act of 1967 ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") for age discrimination, retaliation, and hostile work environment. Lockheed Martin moves for summary judgment.

For the reasons that follow, the Court denies Lockheed Martin's motion for summary judgment on Mr. Power's age discrimination claim and grants the motion on Mr. Power's retaliation and hostile work environment claims.

### BACKGROUND

### I.    Lockheed Martin Corporation

Lockheed Martin is a global security and aerospace company. Within Lockheed Martin, LM Space is a business unit that works on advanced technologies such as space flight systems,

1

satellites, and missile defense systems. Within LM Space, Property Management is a department that manages, organizes, and accounts for all tools, equipment, and materials used by the business unit. Property Management undergoes regulatory audits by federal auditors and carries out organizational financial analyses.

## II.     Mr. Power's Employment with Lockheed Martin

### A. Early Employment

Mr. Power began working at Lockheed Martin's predecessor company in 1990 and became a manager in 1995. From 1995 through 2011, he worked in different business sectors and was promoted on several occasions.

In 2011, Mr. Power became a Property Analyst Senior Manager within Information Systems & Global Solutions, Inc. ("IS&GS"), another Lockheed Martin business area. Property Analyst Senior Manager was a Level 6 leadership position. Mr. Power's responsibilities included asset management, operational management, strategic planning, and management of approximately 25 employees.

### B. Mr. Power Joins LM Space

In January 2016, Lockheed Martin announced that the majority of IS&GS would divest from Lockheed Martin. In June 2016, former IS&GS property employees, including Mr. Power, were brought into the Property Management group within LM Space.

Mr. Power carried his Level 6 leadership position over to LM Space. As a Level 6 Property Analyst Senior Manager at LM Space, Mr. Power managed specific areas within Property Management, including capital assets. He reported directly to Byron Ravenscraft, the Manufacturing Engineering Senior Manager who supervised the entire Property Management group.

2

## C. LM Space Reorganizes the Property Management Group and Mr. Power is Demoted

In February 2017, after the IS&GS divestiture finalized, LM Space decided to realign its reporting structure and rescope positions within Property Management. Lockheed Martin claims that this realignment was designed to increase efficiency and ensure that positions within Property Management were properly scoped given their responsibilities. Mr. Power, who was 56 years old at the time of the realignment, claims that the real purpose was to place younger individuals in management roles.

Around that same time, Mr. Power saw a job posting for what he claims was his position: a Property Analyst Senior Manager at LM Space. Lockheed Martin disputes this, claiming that the posting was for the Property Management supervisory position held by Mr. Ravenscraft, not Mr. Power.

On May 7, 2017, Lockheed Martin hired 38-year-old Nicholas Downing for the open position. Lockheed Martin claims that Mr. Downing, who previously worked for the federal agency responsible for conducting audits of LM Space, was the most qualified candidate. Mr. Power, however, asserts that Kathy Walker, a Director in LM Space and Mr. Power's second-level supervisor, told him that Lockheed Martin selected Mr. Downing because he was "young and full of energy" and because Lockheed Martin wanted a "fresh approach."[1] Power Decl. ¶ 29.

Thereafter, Ms. Walker informed Mr. Power that he (age 56), Mr. Ravenscraft (age 51), and another Level 6 manager who previously reported to Mr. Ravenscraft, Juanita Meyers (age 60), would have their positions "de-leveled" and be required to report to Mr. Downing. On May 22, 2017, Mr. Power was given the choice between being demoted to a Level 5 Position or having

---

[1] Ms. Walker maintains that she never used the words "young" or "youthful" to describe Mr. Downing to Mr. Power.

his employment terminated.[2]  Mr. Power accepted the demotion.  Mr. Ravenscraft and Ms. Meyers also accepted demotions in lieu of termination.  Two younger, lower-level managers in LM Space were not demoted and remained in their respective positions after the realignment: Greg Sallee (age 46) remained a Level 5 Property Analyst Manager, and Michael Pukansky (age 48) remained a Level 4 Property Analyst Associate Manager.

Although Mr. Power's annual salary remained the same and he continued to manage the same employees, Mr. Power asserts that moving down to a Level 5 position greatly affected his potential earnings and future salary.

### D. Mr. Power and Mr. Downing Clash

Mr. Power and Mr. Downing immediately began to clash.  According to Mr. Downing, Mr. Power was underperforming in all areas and was not meeting Lockheed Martin's expectations. Specifically, Mr. Downing asserted that Mr. Power:

- Failed to take ownership of a corrective action plan resulting from a government audit at a site for which Mr. Power was responsible;

- Failed to provide additional information relating to the previous year's annual inventory;

- Failed to provide additional supporting documentation to validate requests to retire assets that were no longer useful or needed;

- Failed to effectively lead the property operations at field sites;

- Failed to attend a meeting with outside auditors in July 2016 without any explanation to Mr. Downing, despite capital assets being Mr. Power's responsibility; and

- Failed to prepare maps, plans, and other processes to improve the business processes after the IS&GS divestiture.

---

[2]     Initially, Lockheed Martin planned to demote Mr. Power to a Level 4 position. However, after some negotiations, additional responsibilities were added to Mr. Power's position and Lockheed Martin agreed to scope him as a Level 5 employee.

Mr. Power disputes Mr. Downing's characterization of his work and, for some of these performance issues, disputes the underlying facts. He also claims that Mr. Downing unjustly criticized his performance and treated him in a more hostile and dismissive manner than he treated younger employees.

In August 2017, Mr. Downing gave Mr. Power the lowest performance review in Mr. Power's career. On August 2, 2017, Mr. Downing and Laura Novak, a human resources representative, met with Mr. Power to discuss his performance review. Mr. Downing believed that Mr. Power failed to embrace the need for improvement.

## E. Mr. Downing and Other Lockheed Martin Employees Discuss Placing Mr. Power on a Performance Improvement Plan

As part of Mr. Power's responsibilities, he was required to sample assets to test Lockheed Martin's internal property impairment controls. Mr. Downing claims that Mr. Power was supposed to sample approximately five percent of all assets.

On August 10, 2017, Mr. Downing learned that Mr. Power had been sampling less than one percent of all assets when conducting his impairment testing. In Mr. Downing's view, such a small sample was inappropriate because it was too small and would not instill confidence in the external auditors or internal stakeholders.[3] After discovering this fact, Mr. Downing emailed Ms. Novak and Ms. Walker to request that Mr. Power be placed on a formal performance improvement plan ("PIP"). Ms. Novak agreed and sent Mr. Downing sample PIP documents.

## F. Mr. Power's First Age Discrimination Complaint

The next day, on August 11, 2017, Mr. Power filed a complaint with the Federal Equal Employment Opportunity Commission ("EEOC"). Mr. Power informed Ms. Walker, Ms. Novak,

---

[3]     Mr. Power claims that the sample amount he used complied with the Department of Defense Guidebook, that he had used the same sample amount for six years without being disciplined for it, and that he had received approval from another Lockheed Martin employee to use that sample size.

and Mr. Downing of his filing that same day. On August 14, 2017, Mr. Power also emailed a complaint of hostile work environment to Lockheed Martin's Ethics Analyst Senior Staff. Among other things, Mr. Power complained that Mr. Downing had said that he wanted a "younger perspective" and "younger employee's inputs." Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 17 (Doc. No. 17-4).

## G. Mr. Power is Officially Placed on a Performance Improvement Plan

On August 16, 2017, six days after Mr. Downing initiated the PIP process and five days after Mr. Power informed Lockheed Martin about his EEOC charge, Lockheed Martin officially placed Mr. Power on a PIP. The PIP set out objectives and provided for a six-month review period. The PIP also stated that further action, up to and including termination, would be taken if Mr. Power did not meet the PIP's objectives.

## H. Mr. Power's Accusations of Retaliation

On August 23, 2017, Mr. Power complained to Lockheed Martin that his placement on the PIP was made in retaliation for his EEOC charge. Later in October 2017, Mr. Power requested to be removed from the PIP at a weekly PIP meeting, but Lockheed Martin denied his request. At this meeting, after Mr. Downing stated that Mr. Power was failing his PIP, Ms. Novak allegedly mentioned Mr. Power's "other options," referring to his EEOC charge. [4]  Power Decl. ¶ 60 (Doc. No. 17-5).

Mr. Power also accuses Lockheed Martin of taking several additional retaliatory actions against him as time went by. For example, Mr. Power claims that on February 2, 2018, he was falsely accused by Jennifer Beilak, an Ethics Analyst Senior Manager, of knowingly allowing one of his supervisees, Joe Murzyn, to submit false data. Mr. Power claims that the accusations were

---

[4]     Mr. Downing claims that Mr. Power, not Ms. Novak, brought up the EEOC charge at the October 2017 meeting.

6

deemed unfounded after an internal review. Lockheed Martin claims that, although there was insufficient evidence to establish misconduct, the investigator did find facts indicating a lack of adequate supervision.

## I. Mr. Power's Second Age Discrimination Complaint

Mr. Power filed a second charge of discrimination and retaliation with the EEOC on February 7, 2018 and so informed Ms. Walker, Mr. Rankin, and Mr. Downing.

## J. Lockheed Martin Demotes Mr. Power for a Second Time

Mr. Power's six-month PIP period closed on February 17, 2018. According to Mr. Downing, Mr. Power failed to achieve the objectives contained in the PIP. He provided Mr. Power his 2017 year-end performance review on March 8, 2018, giving him an overall rating of "Inconsistently Achieved." Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 22 (Doc. No. 17-4); Power Decl. ¶ 72. In response, Mr. Power claimed that his negative review was simply continued age discrimination and retaliation.

In April 2018, Mr. Downing and Mitch Rankin, a human resources representative who replaced Ms. Novak, met with Mr. Power to discuss the outcome of the PIP and to explain next steps, which included further review by an internal corporate committee called the Administrative Review Committee. The Administrative Review Committee met in May 2018 and concluded that the allegation of Mr. Power's poor performance was substantiated. The Administrative Review Committee removed Mr. Power from leadership and placed him into a Level 4 position with no reduction in pay.

Mr. Power appealed the Administrative Review Committee's findings to the Executive Review Committee, another internal corporate committee. The Executive Review Committee

7

upheld the decision and Mr. Power was officially transferred to his new Level 4 position (Regulatory Document Analyst Staff) on May 29, 2018.

## III.  Procedural History

Mr. Power filed a third charge of discrimination with the EEOC in May 2018. In June 2018, he filed a complaint against Lockheed Martin in this Court and alleged claims of age discrimination, retaliation, and hostile work environment under both the ADEA and the PHRA. Lockheed Martin now moves for summary judgment.

## LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's

8

initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## DISCUSSION

In its motion, Lockheed Martin argues that it is entitled to summary judgment on Mr. Power's age discrimination and retaliation claims because Mr. Power cannot establish his *prima facie* case, all of Lockheed Martin's decisions were made for nondiscriminatory business justifications, and there is no evidence in the record to support a finding of pretext. Regarding Mr. Power's hostile work environment claim, Lockheed Martin asserts it is entitled to summary judgment because Mr. Power cannot prove that he suffered intentional discrimination based on his age or that the claimed harassment was severe or pervasive. Mr. Power opposes, arguing that disputes of material fact exist as to whether Lockheed Martin discriminated against him because of his age, whether Lockheed Martin retaliated against him for complaining of age discrimination, and whether Lockheed Martin subjected him to a hostile work environment.

For the reasons explained in detail below, the Court (1) denies Lockheed Martin's motion for summary judgment on Mr. Power's age discrimination claim because Mr. Power has identified

9

evidence from which a factfinder, depending upon credibility evaluations, could reasonably determine that Lockheed Martin's proffered reasons for its actions were pretext for age discrimination; (2) grants Lockheed Martin's motion for summary judgment on Mr. Power's retaliation claim because Mr. Power has failed to demonstrate the causation necessary for his *prima facie* case; and (3) grants Lockheed Martin's motion for summary judgment on Mr. Power's hostile work environment claim because Mr. Power has failed to demonstrate that he suffered severe or pervasive harassment because of his age.

## I. Age Discrimination

A plaintiff bringing an age discrimination claim under the ADEA and/or the PHRA "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). A plaintiff can satisfy that burden in one of two ways, depending on the type of evidence offered. First, the plaintiff can demonstrate with direct evidence that age was the "but-for" cause of the employment action. Second, the plaintiff can use the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish that the employer's proffered reason for the employment action is a mere pretext for unlawful discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Lockheed Martin argues that Mr. Power cannot satisfy his burden under either method. Each is addressed in turn.

### A. Direct Evidence

Proving discrimination by direct evidence is a "high hurdle." *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 587 (E.D. Pa. 2013) (citing *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002)). The plaintiff's evidence must "lead[] not only to a ready logical inference

10

of bias, but also to a rational presumption that the person expressing bias acted on it when he made the challenged employment decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002). "Stray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight . . . ." *Cellucci*, 987 F. Supp. 2d at 588 (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)).

Mr. Power argues that Ms. Walker's statements to him in May of 2017 right before his first demotion constitute direct evidence of age discrimination. These statements include that (1) Mr. Power was being demoted from a Level 6 Property Analyst Senior Manager to a Level 5 Property Analyst Manager; (2) LM Space had hired 38-year-old Mr. Downing to fill the open Property Analyst Senior Manager position; (3) Mr. Power would report to Mr. Downing; and (4) Mr. Downing was hired because of his "youthfulness," "new approach," and because Mr. Downing was "young and full of energy."

These statements are not direct evidence of discrimination. The adverse action challenged here is Mr. Power's demotion from a Level 6 to a Level 5 position. Although Ms. Walker allegedly informed Mr. Power that his position would be "down leveled," Ms. Walker did not say that this related in any way to Mr. Power's or Mr. Downing's age. Ms. Walker's alleged statements referencing Mr. Downing's "youthfulness" were instead made to describe why Mr. Downing was chosen for the Property Analyst Senior Manager position. That decision to hire Mr. Downing was separate and distinct from the decision to demote Mr. Power. *See Lewis v. Temple Univ. Health Sys.*, No. 13-3527, 2015 WL 1379898, at *10 (E.D. Pa. Mar. 26, 2015) ("Although [the supervisor's] comments regarding his preference for hiring younger employees bespeak a certain insensitivity, and provide circumstantial evidence of discrimination, there is no apparent connection between the alleged remarks and the alleged adverse employment actions.") (citation

11

and quotations omitted); *cf. Fakete*, 308 F.3d at 339 (concluding that a supervisor's statement that he was "'looking for younger single people' and that, as a consequence, [the plaintiff] 'wouldn't be happy [at Aetna] in the future'" was enough direct evidence to survive summary judgment).

Mr. Power attempts to connect these two employment decisions by claiming that Mr. Downing was chosen as his replacement. However, the undisputed facts do not support that conclusion. Although Mr. Downing inherited Mr. Power's job title, Mr. Downing's new position encompassed responsibilities that Mr. Power never held, such as supervising all of Property Management at LM Space. *See* Pl.'s Resp. to Def.'s Statement of Facts ¶ 11(b) (Doc. No. 17-7) ("Plaintiff did not supervise Property Management as a whole within [LM Space] . . . ."); *id.* at ¶ 10 ("Admitted" that Mr. Ravenscraft had oversight over Property Management as a whole when Mr. Power joined LM Space); *id* at ¶ 32 ("Admitted" that Mr. Downing assumed the role as supervisor of Property Management at LM Space). Mr. Power also does not allege that his own practical job responsibilities from before the "de-leveling" were removed from his workload. The conclusion supported by the undisputed evidence is that Mr. Downing did not take Mr. Power's job. *See Armstead v. Norfolk S. Corp.*, No. 04-1675, 2006 WL 544403, at *5 (W.D. Pa. Mar. 3, 2006) (focusing on job responsibilities as opposed to job title).

## B. The McDonnell Douglas Burden-Shifting Framework

Where, as here, there is no direct evidence of discrimination, the plaintiff must establish his claims pursuant to the burden-shifting framework outlined in *McDonnell Douglas*. Under that framework, the plaintiff must first establish a *prima facie* case of age discrimination. *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision." *Smith*, 589 F.3d at 691. Finally, if the

defendant articulates a nondiscriminatory basis for its decision, the burden shifts back to the plaintiff to show that "the employer's proffered justification for the adverse action is pretextual." *Id.*

### 1. *Mr. Power's* Prima Facie *Case*

"[T]o establish a prima facie case of discrimination, the plaintiff must demonstrate that (1) s/he is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his or her replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Potence*, 357 F.3d at 370 (citing *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)). As for the fourth element, if the plaintiff was not replaced, he or she can still prove a *prima facie* case by "provid[ing] facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citation and quotations omitted).

Mr. Power was over 40 during the events at issue, and Lockheed Martin does not contest that Mr. Power was qualified for his position. Therefore, the first two elements are satisfied.

As for the third element, Mr. Power identifies three adverse employment actions: (1) his May 2017 demotion; (2) his placement on a PIP in August 2017; and (3) his May 2018 demotion. Lockheed Martin does not contest that Mr. Power's demotions were adverse employment actions.[5] Therefore, the third element is satisfied.

---

[5]     Lockheed Martin does argue that Mr. Power's placement on a PIP was not an adverse employment action. Lockheed Martin correctly notes that "a PIP is not an adverse employment action absent accompanying changes to pay, benefits, or employment status." *Reynolds v. Dep't of the Army*, 439 F. App'x 150, 153 (3d Cir. 2011). However, a reasonable factfinder could conclude that Lockheed Martin placed Mr. Power on a PIP for discriminatory reasons and—when viewed in the aggregate with Mr. Power's demotions, which occurred during or around the same time as the PIP process—the placement on the PIP affected the terms and conditions of Mr. Power's employment. It certainly put him in a posture more sensitive or susceptible to disadvantageous consequences.

Lockheed Martin primarily challenges the fourth element of Mr. Power's *prima facie* case: whether he was replaced by another employee who was sufficiently younger. Lockheed Martin argues that Mr. Power was not replaced by a sufficiently younger employee because Mr. Downing replaced Mr. Ravenscraft—not Mr. Power—in May 2017, and because Mr. Power's managerial responsibilities were split between Mr. Ravenscraft (age 51) and Ms. Meyers (age 60) in May 2018. Thus, Lockheed Martin claims, Mr. Power cannot possibly make the required showing.

However, even if Mr. Power was not replaced by a younger employee, he can still prove a *prima facie* case by "provid[ing] facts" about the alleged adverse employment actions, which, "if otherwise unexplained," show that they were "based on the consideration of impermissible factors." *McErlain v. SPS Techs.*, No. 17-3034, 2019 WL 356541, at \*9 (E.D. Pa. Jan. 28, 2019) (citing *Willis*, 808 F.3d at 644). Mr. Power identifies five facts that at least plausibly can support his claim that Lockheed Martin impermissibly discriminated against him based on age.

First, Mr. Power cites Ms. Walker's alleged May 2017 statements that Mr. Downing was hired because of his "youthfulness," "new approach," and because he was "young and full of energy." Although these statements are not direct evidence that Mr. Power was demoted because of his age, Ms. Walker's alleged comments regarding her preference for hiring younger employees—made contemporaneously with her decision to hire Mr. Downing and her separate decision to demote Mr. Power—"provide circumstantial evidence of discrimination." *Lewis*, 2015 WL 1379898, at \*10.

Second, Mr. Power highlights that in "realigning" the LM Space unit in May 2017, Lockheed Martin demoted three Level 6 managers over the age of 50—Mr. Power (age 56), Ms. Meyers (age 60), and Mr. Ravenscraft (age 51)—and required them to report to a younger, new hire, Mr. Downing (age 38).

14

Third, Mr. Power identifies Messrs. Sallee (age 46) and Pukansky (age 48), two younger, lower-level LM Space managers who were not offered a severance package or demoted during the May 2017 realignment. Mr. Power argues that this sent a message to Lockheed Martin's employees: if you are over 50, you can either leave or be demoted; if you are under 50, there will be no change to your employment status.

Citing *Anderson v. Consolidated Rail Corporation*, 297 F.3d 242 (3d Cir. 2002), Lockheed Martin claims that Mr. Sallee, who was a Level 5 manager, and Mr. Pukansky, who was a Level 4 manager, are not proper comparators because both individuals were in lower-level positions than Mr. Power. However, in *Anderson*, the Third Circuit Court of Appeals affirmed the district court's holding that the plaintiffs failed to establish a *prima facie* case because they compared themselves to "entry-level positions or other low-level positions." *Anderson*, 297 F.3d at 249. Here, although Mr. Pukansky and Mr. Sallee were not Level 6 managers, they were managers nonetheless, not "entry-level" or "low-level" positions. They are not perfect comparators, but when considered with Ms. Walker's alleged statements and the demotion of the older Mr. Power, Ms. Meyers, and Mr. Ravenscraft, the fact that managers younger than Mr. Power in LM Space were not demoted is circumstantial evidence of age discrimination.

Fourth, Mr. Power highlights that, throughout his 29-year career, he had consistently received positive performance reviews. For example, in the three years prior to the realignment, Mr. Power received an overall rating of "Achieved/Substantially Achieved Commitments."[6] Pl.'s Opp'n to Def.'s Mot. for Summ. J. Exs. 4, 14, 15 (Doc. No. 17-3). In contrast, Mr. Power's August 2017 mid-year review from Mr. Downing, issued after his first demotion and shortly before Mr.

---

[6]     In reply, Lockheed Martin notes that "Achieved/Substantially Achieved Commitments" is the second lowest of four possible ratings. It argues, therefore, that Mr. Power's past performance reviews were, at best, mediocre.

Power was placed on the PIP, was his first review with an overall score of "Inconsistently Achieved." *See* Downing Decl. Ex. A (Doc. No. 16-3).

Finally, Mr. Power identifies other incidents that he claims constitute evidence of Lockheed Martin's bias towards older workers. For example, Mr. Power claims that Mr. Downing told Mr. Power at a meeting in May 2017 that he wants a "younger perspective" and "younger employee's inputs." Mr. Power also claims that Mr. Downing encouraged older employees to move on to retirement at a September 2017 presentation.[7]

Read alone, any of these facts might not be enough to demonstrate Lockheed Martin's use of "impermissible factors" in making employment decisions. Together, however, Mr. Power has shown enough to establish a *prima facie* case. *See Howell v. Millersville Univ. of Pa.*, 283 F. Supp. 3d 309, 325 (E.D. Pa. 2017) (finding that a plaintiff presented a *prima facie* case of age discrimination despite the fact that he was not replaced by someone younger because his employer did not give him all of the responsibilities for the position it hired him for and because his supervisor made statements about the desirability of hiring younger employees).

Because Mr. Power has made a showing of his *prima facie* case, the burden shifts to Lockheed Martin to articulate legitimate, nondiscriminatory reasons for its actions.

### 2. *Lockheed Martin's Legitimate Nondiscriminatory Reasons*

Lockheed Martin claims that after the IS&GS divestiture, which resulted in two Level 6 managers (Mr. Power and Ms. Meyers) reporting to another Level 6 manager (Mr. Ravenscraft), it decided to realign its reporting structure and rescope positions within LM Space. According to Ms. Walker, the purpose of the realignment was to increase efficiency and to ensure that positions were properly scoped given their responsibilities. Lockheed Martin claims that it considered

---

[7]     Mr. Downing claims that he never encouraged older employees to resign. Whether Mr. Downing in fact encouraged older employees to retire, however, is a question for the jury, not the Court.

16

several internal and external candidates for the Level 6 supervisory position and selected Mr. Downing because it believed he was the most qualified. Then, based on their responsibilities, the positions held by Mr. Power, Mr. Ravenscraft, and Ms. Meyer were determined to be properly scoped at Level 5.

Three months after Mr. Power assumed his new role, Lockheed Martin placed him on a PIP because Mr. Downing believed that Mr. Power was not meeting performance expectations. Lockheed Martin highlights a list of Mr. Power's performance issues, including:

- Mr. Power's failure to take ownership of a corrective action plan resulting from a government audit at a site for which Mr. Power was responsible;

- Mr. Power's failure to provide additional information relating to the previous year's annual inventory;

- Mr. Power's failure to provide supporting documentation to validate requests to retire assets that were no longer useful or needed;

- Mr. Power's failure to effectively lead the property operations at field sites;

- Mr. Power's failure to attend a meeting with outside auditors in July 2016 without any explanation to Mr. Downing; and

- Mr. Power's lack of progress in Mr. Downing's view on preparing maps, plans, and other processes to improve the business processes after the IS&GS divestiture.

Mr. Downing expressed these concerns to Mr. Power at his mid-year review in August 2017. Shortly thereafter, Mr. Downing learned about an issue concerning Mr. Power's decision to sample less than one percent of assets during impairment testing and requested permission to place Mr. Power on a PIP. Lockheed Martin claims that this sub-standard performance, not Mr. Power's age, was the reason it placed him on the PIP. Following the six-month PIP period, Mr. Downing concluded that Mr. Power failed to meet the commitments in his PIP, which led to Mr. Power's second demotion.

Lockheed Martin has met its light burden of articulating a legitimate business reason for its employment actions. *See Edgerton v. Wilkes-Barre Home Care Servs., LLC*, 600 F. App'x 856, 858 (3d Cir. 2015) (holding that plaintiff's poor performance and lack of leadership was a legitimate, nondiscriminatory reason for termination). The burden shifts back to Mr. Power to provide evidence that Lockheed Martin's proffered reasons are pretext for discrimination.

### 3. Mr. Power's Evidence that Lockheed Martin's Reasons Were Pretextual

A plaintiff can establish pretext by "(i) discrediting the [defendant's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). The question of whether Lockheed Martin pretextually demoted Mr. Power overlaps substantially with the Court's analysis of Mr. Power's *prima facie* case. *See Doe v. C.A.R.S. Prot. Plus.*, 527 F.3d 358, 370 (3d Cir. 2008) ("[E]vidence supporting the *prima facie* case is often helpful in the pretext stage . . . ."); *Fuentes,* 32 F.3d at 764 ("[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.") (citations omitted).

As detailed in the context of his *prima facie* case, Mr. Power supports his argument that he was discriminated against because of his age with the following facts:

- During the realignment, Lockheed Martin demoted three Level 6 managers over the age of 50 and required them to report to a new, younger hire;

- Lockheed Martin did not demote two younger, lower-level LM Space managers;

- Ms. Walker told Mr. Power that Lockheed Martin was hiring Mr. Downing because of his "youthfulness," "new approach," and because he was "young and full of energy";

- Additional examples of Lockheed Martin's alleged bias towards older workers, such as Mr. Downing's May 2017 statement to Mr. Power that he wants a "younger perspective" and input from "younger employees," and Mr. Downing's September 2017 presentation in which he allegedly encouraged older employees to move on to retirement; and

- Prior to the realignment, Mr. Power had consistently received positive performance reviews, but after the realignment, Mr. Power allegedly became the subject of heightened scrutiny and unjust criticism.

Mr. Power also challenges some of the factual bases for Mr. Downing's performance critiques. For example, in response to Mr. Downing's claim that Mr. Power failed to take ownership over the failed audit, Mr. Power alleges that Mr. Ravenscraft—who was still the supervisor of Property Management at the time of the failed audit—instructed Mr. Power that Mr. Sallee, not Mr. Power, would handle the corrective action plan. And in response to Mr. Downing's claim that Mr. Power used improper sampling during impairment testing, Mr. Power alleges that his sample size complied with the Department of Defense guidelines, that he had used the same sampling approach for the last six years and had never been reprimanded, and that another Lockheed Martin employee approved his use of the sample size. Mr. Power also claims that he met his PIP objectives and submitted quality work.

In reply, Lockheed Martin argues that Mr. Power's disagreement with Mr. Downing's assessment of his performance is not enough to establish pretext. *See Allen v. Petsmart, Inc.*, 512 F. Supp. 2d. 288, 296 (E.D. Pa. June 1, 2007) ("The fact that an employee disagrees with an employer's evaluation of his performance does not prove pretext.") (citing *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)). This argument applies to Mr. Power's general claims that he met his PIP objectives and submitted quality work. However, unlike *Allen*, it is not just the supervisor's characterization of the quality of the plaintiff's work that is in question; rather, Mr. Power disputes the facts underlying some of the central events at issue, such as the failed audit and the impairment

19

testing. If a jury believes Mr. Power's versions of these events, it may also believe that at least some of Lockheed Martin's stated concerns were pretextual. *See Chipollini v. Spencer Gifts*, 814 F.2d 893, 900 (3d Cir. 1987) (reversing district court because it "overlooked evidence . . . which [could] be read as challenging the defendant's factual support with respect to its proffered reasons for discharge"); *cf. Billet*, 940 F.2d at 825 ("There is no doubt that the events underlying the misconduct probations were real.").

Lockheed Martin also argues that past performance alone cannot establish pretext. *See, e.g.*, *Ezold*, 983 F.2d at 528 ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations."). However, Mr. Power cites his past positive performance as only one of a number of facts that support his claim of discrimination. Because Mr. Power does not rely on past performance alone, the Court cannot find he has failed to establish pretext on this ground.

Lockheed Martin next challenges Mr. Power's "citation of random events," Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. 12 (Doc. No. 19), including:

- Ms. Walker's alleged May 2017 statement that Mr. Downing was hired because he was "young and full of energy," and because Lockheed Martin wanted a "fresh approach";

- Mr. Downing's alleged May 2017 statement that he wanted the input of younger employees; and

- Mr. Downing's alleged encouragement of older employees to retire at a presentation in September 2017.

In arguing that these alleged events do not demonstrate pretext, Lockheed Martin relies on *Lewis v. Temple Univ. Health Sys.*, No. 13-3527, 2015 WL 1379898 (E.D. Pa. Mar. 26, 2015). In *Lewis*, the court found that a manager's frequent expression of his desire to obtain younger employees because they would give a "fresher insight" and would have "a different way of looking at things" could not support a finding of pretext because the plaintiff did not provide context that

would tie the manager's comments to his assessment of the plaintiff. 2015 WL 1379898 at \*18. But unlike *Lewis*, the statements here are temporarily connected to the employment actions at issue. *See Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 241 (3d Cir. 2011) ("When considering whether remarks are probative of discrimination, we consider the speaker's position in the organization, the content and purpose of the statement, and the temporal connection between the statement and the challenged employment action.") (citation and quotations omitted). Here, Ms. Walker's and Mr. Downing's statements expressing their preference for younger employees were allegedly made in May 2017, right before Mr. Power was first demoted. These statements, allegedly made by the decisionmakers contemporaneously with the events at issues, are stronger evidence of pretext than the statements at issue in *Lewis*.

Finally, Lockheed Martin highlights that Mr. Power does not have any evidence showing that the scope of his work warranted a Level 6 designation in LM Space prior to the reorganization. It also notes that Mr. Ravenscraft (age 51) and Ms. Meyers (age 60) both thrived under Mr. Downing's supervision. This is not in dispute. Mr. Power does not attempt to establish that his role fit within the Level 6 rubric before his demotion. And the fact that two employees over 50, one of whom is older than Mr. Power himself, continue to succeed at Lockheed Martin after the reorganization may well weaken Mr. Power's claim that Lockheed Martin discriminates on the basis of age.

However, these arguments are better suited for a jury. The Third Circuit Court of Appeals has explained that, to survive summary judgment, a plaintiff need only present evidence from which "a factfinder *could* reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex, Inc.*, 707 F.3d

21

417, 427 (3d Cir. 2013) (quoting *Fuentes,* 32 F.3d at 764) (emphasis added). Moreover, a plaintiff "need not always offer evidence sufficient to discredit all of the rationales advanced by the employer." *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). Rather, "the rejection of some explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the remaining rationales, even where the employee fails to produce evidence particular to those rationales." *Id.*

Mr. Power supports his version of the story with the allegedly discriminatory statements made by Ms. Walker and Mr. Downing, his previously positive performance reviews, and by challenging the facts underlying some of his performance issues highlighted by Lockheed Martin. Although not all of Mr. Power's evidence holds water, the summary judgment standard, in which the evidence is to be interpreted in the light most favorable to the plaintiff, is "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers Univ.*, 120 F.3d 426, 431 (3d Cir. 1997). Mr. Power's evidence of age discrimination is enough to survive summary judgment.

## II. Retaliation

Absent direct evidence of retaliation, the burden-shifting framework under *McDonnell Douglas* also applies to retaliation claims under the ADEA and the PHRA. *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). "To establish a *prima facie* case of retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002) (citation and quotations omitted). "For an employer's action to satisfy the second prong of a prima facie case of retaliation,

22

the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The following timeline sets forth Mr. Power's protected activities and Lockheed Martin's actions, as alleged by Mr. Power:

| Date | Type of Event | Description |
|------|---------------|-------------|
| August 11, 2017 | Protected Activity | Mr. Power files his first charge of discrimination with the EEOC. Mr. Power informs Ms. Walker, Ms. Novak, and Mr. Downing of his filing. |
| August 14, 2017 | Protected Activity | Mr. Power emails Danyelle Taylor Edwards, a Lockheed Martin Ethics Officer, complaining of discrimination and a hostile work environment. |
| August 16, 2017 | Adverse Action | Mr. Power is placed on the PIP. |
| August 23, 2017 | Protected Activity | Mr. Power emails Ms. Walker, Ms. Novak, Mr. Downing, and Ms. Taylor that he believes he was placed on the PIP in retaliation for filing his charge with the EEOC. |
| February 2, 2018 | Adverse Action | Ethics Analyst Senior Manager Ms. Beilak accuses Mr. Power of knowingly allowing one of his supervisees, Joe Murzyn, to submit false data. |
| February 3, 2018 | Protected Activity | Mr. Power emails Ms. Beilak, denying her accusations and stating that he believes the accusations are continued age discrimination and retaliation for filing his charge with the EEOC. |
| February 7, 2018 | Protected Activity | Mr. Power files his second charge of discrimination with the EEOC. Mr. Power informs Ms. Walker, Mr. Rankin, and Mr. Downing of his filing. |
| March 3, 2018 | Adverse Action | Mr. Power continues to be subjected to a hostile work environment, demonstrated by a March 3, 2018 email to Mr. Rankin asking to be reassigned because his "situation" is causing him to become physically ill. |
| March 8, 2018 | Adverse Action | Mr. Power receives a negative 2017 performance evaluation. |
| March 8, 2018[8] | Protected Activity | Mr. Power responds to his 2017 performance evaluation, complaining of discrimination and retaliation. |
| May 16, 2018 | Adverse Action | Mr. Power is informed that he is being demoted to a Level 4 position. |
| May 22, 2018 | Protected Activity | Mr. Power files an Appeal of Discipline regarding the decision to demote him, stating he was placed on the PIP in retaliation for filing his charge with the EEOC. |

For the purposes of establishing his *prima facie* case, Mr. Power has met his burden to show that he engaged in protected activity and was later or contemporaneously subjected to

---

[8]     It is not clear from the parties' briefing or the evidence the exact date that Mr. Power responded to his evaluation. However, the performance evaluation in question includes both Mr. Downing's comments and Mr. Power's responses and carries only the date of March 8, 2018.

adverse actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. This leaves his retaliation claim to turn on the third element: causation. The Court first discusses two of the alleged adverse actions in question—Mr. Power's placement on the PIP and his being subjected to a hostile work environment—before completing a broader causation analysis.

## A. Placement on the PIP

A plaintiff cannot establish a causal connection "without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 196.

Mr. Downing informed Mr. Power of his dissatisfaction with Mr. Power's performance in Mr. Power's mid-year review on August 2, 2017. Then, on August 10, 2017—one day *before* Mr. Power filed his charge with the EEOC—Mr. Downing requested permission from Ms. Walker and Ms. Novak to place Mr. Power on a PIP. Even though Mr. Power was not formally placed on the PIP until after he informed Lockheed Martin that he had filed with the EEOC on August 11, 2017, it is undisputed that the wheels were already in motion to place Mr. Power on the PIP before he filed his charge of discrimination. *Lewis*, 2015 WL 1379898, at \*19 (finding that the defendant could not have acted with a retaliatory purpose when placing the plaintiff on a PIP because "[t]here [was] clear evidence that the wheels were in motion to place plaintiff on the first PIP well before he registered his harassment complaint"). Because Mr. Power had not yet engaged in protected activity at the time that Mr. Downing, Ms. Novak, and Ms. Walker discussed placing him on the PIP, their resulting decision to do so could not have been motivated by retaliatory animus.

Mr. Power argues that the PIP timing is still unusually suggestive because he was not informed about his placement on the PIP until after he filed his charge with the EEOC. However,

the issue is not when Mr. Power found out about the PIP; it is whether Mr. Downing, Ms. Novak, and Ms. Walker knew of Mr. Power's protected conduct at the time that they decided to place him on the PIP. They did not, and therefore could not have been motivated by retaliatory animus in doing so.

For these reasons, Mr. Power cannot rely on his placement on the PIP to support his claim of retaliation.

## B. Hostile Work Environment

Mr. Power does not state a separate retaliatory hostile work environment claim. Rather, he supports his broader claim of retaliation by arguing that a hostile work environment was one of the adverse actions Lockheed Martin subjected him to following his protected activities. Mr. Power cites only one piece of evidence to support this argument—an email he sent to Mr. Rankin of human resources on March 3, 2018 asking for a job reassignment:

> My situation has grown progressively worse to the point where I am becoming physically ill before, during & after meetings w/ Nick due to extreme stress. I have been advised to avoid the source of the stress, but given my current job that is not possible. I need to be reassigned before my health deteriorates to a point where I can't recover.

Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 25 (Doc. No. 17-4); Power Decl. ¶ 70 (Doc. No. 17-5).

Even if the Court were to infer that Mr. Power's "situation" refers to discriminatory conduct or a hostile work environment, Mr. Power has failed to identify any evidence, other than his own conclusive allegations, connecting this supposed hostile work environment to his protected activities. He simply asserts that Lockheed Martin's "ongoing hostile work environment" constituted an adverse action. Pl.'s Opp'n to Def.'s Mot. for Summ. J. 26 (Doc. No. 17). This is not enough evidence to support a finding that Lockheed Martin subjected Mr. Power to a hostile work environment, let alone that it did so in retaliation for Mr. Power's protected activities.

26

On this point, the Court notes that Mr. Power also brought a separate, stand-alone hostile work environment claim. In opposing summary judgment on that claim, Mr. Power has identified additional evidence beyond the lone email described above. However, as analyzed below, even with additional evidence, Mr. Power cannot establish a hostile work environment. Therefore, his reliance on this alleged hostile work environment to bolster his retaliation claim is unsuccessful.

## C. Other Retaliatory Acts

"A plaintiff may establish a causal connection based on 'an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action,' 'a pattern of antagonism coupled with timing,' or 'evidence gleaned from the record as a whole.'" *Macknet v. Univ. of Pa.*, 738 F. App'x 52, 56 (3d Cir. 2018) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

### 1. *Unusually Suggestive Temporal Proximity*

"[T]emporal proximity between the employee's protected activity and the alleged retaliatory action may satisfy the causal link element of a prima facie retaliation claim, at least where the timing is 'unusually suggestive of retaliatory motive.'" *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). However, the Third Circuit Court of Appeals "has declined to infer such a causal link where an employee's negative performance evaluations predated any protected activity." *Verma v. Univ. of Pa.*, 533 F. App'x 115, 119 (3d Cir. 2013) (citing *Shaner*, 204 F.3d at 504–505).

In addition to his placement on the PIP and the hostile work environment, Mr. Power alleges he was subjected to three adverse actions in retaliation for engaging in protected activity: (1) being falsely accused of permitting his supervisee to submit false data; (2) receiving a negative

27

2017 performance evaluation; and (3) being demoted to a Level 4 position. The Court will also consider a fourth: Mr. Power's failing the PIP.

All but the first of these four adverse actions are directly related to Mr. Power's work performance. Therefore, whether Lockheed Martin's initial complaints related to Mr. Power's performance predated or postdated his protected activity becomes relevant to the Court's analysis.

According to Mr. Power, he first engaged in protected activity on August 11, 2017 when he filed his first charge of discrimination with the EEOC and informed his supervisors of the same. Nine days *prior* to this protected activity, Mr. Power received his first negative performance review from Mr. Downing on August 2, 2017. According to Mr. Power, in that review Mr. Downing "unjustly criticized [his] performance, stating that he was underperforming in all areas and provided [him] with no positive feedback." Compl. ¶ 44. Mr. Downing also "stated three times that [Mr. Power] was 'not consistently achieving standards or meeting his expectations for an L5 leader.'" *Id.* at ¶ 45.

Because this negative performance predated any protected activity, Mr. Power cannot rely on temporal proximity alone in arguing that his later failure of the PIP, his subsequent negative performance review, and his eventual second demotion were in retaliation for his engaging in protected activity. *See Shaner*, 204 F.3d at 504–505 (finding no evidence of a causal link between the plaintiff's filing of an EEOC charge and his later negative performance evaluation where "the record shows that [his] performance evaluations contained similar criticisms . . . before and after he filed his first EEOC charge"); *see also Gladysiewski v. Allegheny Energy*, 398 F. App'x 721, 724 (3d Cir. 2010) (finding no causation because the defendant employer was "proceeding along lines previously contemplated" when it terminated the plaintiff employee for reasons similar to

28

those given for the employee's earlier demotion and placement on a PIP) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

Turning to the temporal proximity of his sole remaining adverse action, Mr. Power claims that on February 2, 2018, he was falsely accused of allowing his supervisee, Mr. Murzyn, to submit false data. This accusation came nearly six months after Mr. Power's most recent protected activity in August 2017. This temporal proximity, considered alone, is insufficient to establish causation. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.").

Mr. Power has failed to establish causation based on an unusually suggestive temporal proximity between his protected activities and any adverse actions. In the absence of causation by temporal proximity, Mr. Power must identify a pattern of antagonism or other circumstantial evidence of a retaliatory animus.

### 2. *Pattern of Antagonism or Other Evidence from the Record as a Whole*

In *Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005), Montgomery County District Attorney's Office employee Robert Fasold received a negative performance review and was subsequently fired. After he was fired, Mr. Fasold filed a grievance and was granted a Level I hearing, at the end of which his grievance was denied. *Fasold*, 409 F.3d at 182. Mr. Fasold then filed claims of age discrimination with the EEOC and the Pennsylvania Human Relations Commission. *Id.* Less than three months later, a Level II hearing was held regarding his previously filed grievance, which was again denied and his termination upheld. *Id.* The letter denying Mr. Fasold's grievance

"specifically mentioned the pending administrative proceedings charging age discrimination and called those allegations 'preposterous.'" *Id.* at 182–83.

The district court granted summary judgment, finding that Mr. Fasold had failed to establish a causal link between his protected activity and the ultimate denial of his grievance. *Id.* at 183. The Third Circuit Court of Appeals reversed, first finding that a temporal proximity of less than three months may provide an evidentiary basis for inferring retaliation. *Id.* at 189–90. The court then supplemented its temporal analysis with evidence in the record that Mr. Fasold had been questioned about his pending age discrimination claims during his Level II hearing, as well as the fact that the letter ultimately denying his grievance referenced those claims. *Id.* at 190. "Moreover, during his deposition, [the employer] conceded that Fasold's administrative complaint had 'irritated' him and caused him to view Fasold as suspect." *Id.* This evidence, as a whole, could support an inference of a causal link between Mr. Fasold's protected activity and the ultimate denial of his grievance following his Level II hearing. *Id.*

The evidence and context of Mr. Power's case, however, does not lead to the same conclusion. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) ("The element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.") As outlined in the timeline above, Mr. Power identifies several discrete, adverse employment actions beginning with the PIP in August 2017 and ending with his second demotion in May 2018. Mr. Power generally claims that his "ongoing complaints of discrimination, retaliation, and harassment simply added fuel to Defendant's fire to get rid of [him]." Pl.'s Opp'n to Def.'s Mot. for Summ. J. 30 (Doc. No. 17). However, aside from his own accusations, Mr. Power has not identified any actual evidence connecting Lockheed Martin's

30

adverse employment actions to his protected activities or suggesting that Lockheed Martin was motivated by a retaliatory animus.

For example, Mr. Power claims that Lockheed Martin retaliated against him in part by accusing him of allowing Mr. Murzyn to submit false data. The evidence, however, reflects that an employee named Yvonne Gould initially raised concerns about Mr. Murzyn's data, not Mr. Downing, and that the accusation was made to Mr. Power by Ms. Beilak, an Ethics Analyst Senior Manager. There is no evidence in the record that either Ms. Gould or Ms. Beilak were aware of Mr. Power's protected activities at the time.

Further, unlike *Fasold*, there are no comments or references by decisionmakers related to Mr. Power's protected activities that suggest those protected activities were considered in any way by Lockheed Martin.[9] Rather, the evidence here shows that Lockheed Martin continued to be dissatisfied by Mr. Power's performance after he engaged in protected activity, just as it had been *before* he engaged in protected activity. Here, where Lockheed Martin was proceeding along lines previously contemplated, and there is no evidence of an intervening pattern of antagonism or a retaliatory animus tying Lockheed Martin's actions to Mr. Power's protected activity, there is no evidence of a causal connection. As the Third Circuit Court of Appeals has observed:

> While it is possible that a manager might make a poor evaluation to retaliate against an employee for making an EEOC charge, still it is important that an employer not be dissuaded from making what he believes is an appropriate evaluation by a reason of a fear that the evaluated employee will charge that the evaluation was retaliatory. In this regard, we are well aware that some employees do not recognize their deficiencies and thus erroneously may attribute negative evaluations to an

---

[9]     The Court notes that in the background section of his brief, Mr. Power claims that he asked to be removed from his PIP at an October 2017 weekly PIP meeting, and Lockheed Martin refused. Mr. Power claims that at this meeting, *after* Mr. Downing stated that Mr. Power was failing his PIP, Ms. Novak from HR mentioned Mr. Power's "other options" and referred to his EEOC charges.

First, Mr. Power does not refer to or cite this statement in the retaliation portion of his brief. Second, Mr. Power offers no further explanation of the encounter. Without more, this sole, vague reference to Mr. Power's EEOC charge—of which Mr. Downing was already fully aware—is insufficient to establish that Lockheed Martin was motivated by a retaliatory animus.

31

employer's prejudice. Accordingly, in a case . . . in which the circumstances simply cannot support an inference that the evaluations were related to the EEOC charges, a court should not hesitate to say so.

*Shaner*, 204 F.3d at 505.

Because Mr. Power has failed to establish a causal connection, either by temporal proximity, a pattern of antagonism, or evidence gleaned from the record as a whole, he cannot make out a *prima facie* case of retaliation. Mr. Power may be able to argue that the alleged adverse actions he suffered are further evidence of Lockheed Martin's discrimination, but there is no evidence of retaliation. For this reason, the Court grants Lockheed Martin's motion for summary judgment on Mr. Power's retaliation claim.

## III. Hostile Work Environment

Finally, Mr. Power asserts a hostile work environment claim. To prevail on a hostile work environment claim under the ADEA and the PHRA, Mr. Power must show that: "(1) he suffered intentional discrimination because of his age; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected him; (4) the harassment would detrimentally affect a reasonable person in that position; and (5) respondeat superior liability." *Howell*, 283 F. Supp. 3d at 332 (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

In determining whether conduct is sufficiently hostile to support a claim, a court must consider the totality of the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*,

32

510 U.S. 17, 21 (1993). "The discriminatory conduct must be extreme to amount to a change in the terms and conditions of employment," and, "[u]nless extremely serious, offhand comments and isolated incidents are insufficient to sustain a hostile work environment claim." *Chinery v. Am. Airlines*, 778 F. App'x 142, 145 (3d Cir. 2019) (citations and quotations omitted omitted). "Generally, courts look to whether a workplace was 'so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of the harassed employees.'" *Hatch v. Franklin Cty.*, 755 F. App'x 194, 202 (3d Cir. 2018) (quoting *Meritor Savs. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).

Mr. Power's hostile work environment claim is stated broadly with little identification of concrete incidents in support. In opposing summary judgment, Mr. Power points to "statements from [his] own supervisors about the company's bias against older workers and preference for younger workers," as well as "[t]he ongoing treatment by Downing, which was radically different [from] the positive workplace treatment [he] had endured for decades prior." Pl.'s Opp'n to Def.'s Mot. for Summ. J. 31 (Doc. No. 17). As noted in the context of Mr. Power's retaliation claim, Mr. Power also relies on an email he sent to Mr. Rankin of human resources in March of 2018 asking for a job reassignment because his "situation" had "grown progressively worse," causing him to become physically ill before, during, and after meetings with Mr. Downing "due to extreme stress." Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. 25 (Doc. No. 17-4); Power Decl. ¶ 70 (Doc. No. 17-5).

Upon its own review of the record, the Court also identifies an August 14, 2017 email Mr. Power sent to Ethics Officer Danyelle Taylor Edwards in which he outlined several events he believed constituted a hostile working environment, including:

- Mr. Downing stating he wanted a "younger perspective" and "younger employee's inputs";
- Mr. Downing telling Mr. Power he was going to micromanage him;

- Mr. Downing telling Mr. Power he was going to be hard on him and falsely accusing him of manipulating data;

- Receiving a mid-year performance review without a single positive comment;

- Having an imbalanced workload where it was impossible to execute all the responsibilities assigned;

- Mr. Downing telling Mr. Power that if he could not complete the workload then he would find someone who would;

- Mr. Downing giving Mr. Power an unachievable commitment by requiring him to have no special programs non-compliance determinations when one had already occurred earlier in the year;

- Having a workload that increased more than any other manager's; and

- Mr. Downing pressuring Mr. Power to charge direct at least 50 percent of the time when doing so would constitute mischarging.

Viewing the evidence as a whole, the Court cannot find that the conduct Mr. Power complains of constitutes severe or pervasive harassment, much less threatening, "polluted," or destructive of emotional and psychological stability. Aside from a "handful of isolated statements" by Mr. Power's supervisors, "every single one of these acts is neutral with respect to his age." *Howell*, 283 F. Supp. 3d at 332–33 (E.D. Pa. 2017) (granting summary judgment on employee's hostile work environment claim), *aff'd*, 749 F. App'x 130 (3d Cir. 2018).

The Court acknowledges that an objectively neutral act may in fact be motivated by discriminatory animus. *See Cardenas v. Massey*, 269 F.3d 251, 261–62 (3d Cir. 2001) ("[T]he advent of more sophisticated and subtle forms of discrimination requires that we analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment, in evaluating a hostile work environment claim.") (citations omitted). However, the evidence here does not show physically threatening or humiliating conduct, or a workplace permeated with intimidation, ridicule, and insult. *See Whitesell v. Dobson Commun.*, 353 F. App'x 715, 717 (3d Cir. 2009) (dismissing hostile work

environment claim on summary judgment because the alleged comments were not physically threatening or humiliating, and the plaintiff did not show how the comments affected her work performance); *Howell*, 283 F. Supp. 3d at 332–34 (dismissing hostile work environment claim on summary judgment because none of the plaintiff's allegations involved "physically threatening or humiliating conduct"); *Logan v. Countrywide Home Loans*, No. 04-5974, 2007 WL 879010, at *11–12 (E.D. Pa. Mar. 15, 2007) (holding that age-related comments—including referring to the plaintiff as "pops" and "the old man"—did not a support hostile work environment claim because they were not threatening or profane); *cf. Johnson v. Phila. Hous. Auth.*, 218 F. Supp. 3d 424, 428, 438 (E.D. Pa. 2016) (denying summary judgment on hostile work environment claim because the plaintiff presented evidence showing that his supervisor constantly subjected him to age related harassment, including making statements that the plaintiff had "been on the job too long," and that "maybe it was time for [the plaintiff] to move on," and referencing the plaintiff's age in association with questions like, "Why did you even come in today?"). In contrast, Mr. Power's evidence paints the picture of what had become, for him, an unpleasant work environment with the arrival of a new boss, which, while "not a good thing, . . . is not necessarily actionable." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016).

Because Mr. Power has not identified evidence of severe or pervasive harassment on account of his age, the Court grants Lockheed Martin's motion for summary judgment on Mr. Power's hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Lockheed Martin's motion for summary judgment is granted in part and denied in part. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**